United States District Court
District of Massachusetts

| | |
|---|---|
| Nicholas Galakatos, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 24-11259-NMG |
| Marsh & McLennan Companies, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM & ORDER

GORTON, J.

This case arises out of a boating accident in Greece, after which the boat owner, Nicholas Galakatos ("plaintiff" or "Galakatos"), made claims against defendants, Marsh & McLennan Companies, Inc. and others (collectively, "defendants") for negligence, breach of contract and breach of fiduciary duty. Pending before the Court is 1) a motion of defendants to dismiss for failure to state a claim or, in the alternative, transfer venue to the United States District Court for the Southern District of New York and 2) a motion to strike filed by plaintiff.  For the following reasons, the motion to dismiss will be allowed and the motion to strike will be denied.

I. **Background**

Plaintiff is a resident of Massachusetts and Vermont and owns property in Greece.  In 2015, he purchased a boat

("Galani") to use in Greece. Defendants are associated entities that offer professional services including insurance brokerage. Plaintiff retained defendants' insurance brokerage services for the first time in 2006 and have purportedly relied since then on their advice to procure insurance.

Sometime before 2018, defendants informed plaintiff, with respect to his liability insurance, that

> [i]n order for Marsh to thoroughly and appropriately advise you and eliminate potential gaps in coverage, it is very important that all your property and liability exposures be identified and disclosed to us . . . .

Contemporaneously, plaintiff purchased a one-year, $10,000,000 excess coverage liability policy from American International Group ("AIG"). The AIG policy was to provide coverage for losses sustained "anywhere in the world." Plaintiff also purchased third party liability insurance for Galani from Groupama Insurances ("Groupama") in May, 2018. He contends that he disclosed his ownership of Galani and his Groupama insurance policy to defendants that same month.

In September, 2018, Galani collided with another vessel off the coast of Greece, resulting in damage to both vessels, as well as personal injuries to some passengers aboard the other vessel. Plaintiff informed defendants of the accident, and they requested information concerning

> all [of his] property and liability exposures, even those for which [it] may not be providing coverage.

The collision spawned litigation as a result of which plaintiff paid an undisclosed amount in settlement of claims against him. He then made a claim on his AIG policy which was denied, allegedly because defendants failed to add the Groupama policy to the AIG policy.

Plaintiff subsequently filed suit in this Court alleging that defendants failed to place and procure adequate liability insurance coverage for Galani. The complaint asserts claims for 1) breach of contract, 2) negligence and 3) breach of fiduciary duty. Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, alternatively, to transfer venue to the United States District Court for the Southern District of New York. Plaintiff subsequently moved to strike a client engagement letter that defendants attached to their memorandum in support of their motion to dismiss.

## II. Legal Standard

To survive a motion to dismiss, a plaintiff's complaint must contain factual matter sufficient to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible if, after accepting as true all non-conclusory factual allegations, the Court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-

Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

### III. Application

As a threshold matter, the parties disagree as to whether Massachusetts or New York law applies but they do not address a conflict of law issue. Based upon the authorities cited below, however, the Court finds no material distinction between the governing standards under Massachusetts and New York law, and therefore considers all three claims by reference to the laws of both jurisdictions. See Heinrich ex rel. Heinrich v. Sweet, 49 F. Supp. 2d 27, 37 (D. Mass. 1999) (addressing motion to dismiss "utilizing both New York and Massachusetts case law" because "the states [were] in agreement regarding the governing rules" applicable to claims at issue).

#### A. Breach of Contract

Defendants first move to dismiss plaintiff's claim for breach of contract by asserting that plaintiff has failed to allege the specific terms of the parties' alleged agreement. Under Massachusetts law, breach of contract claim requires a plaintiff to demonstrate that 1) "a valid, binding contract existed," 2) "the defendant breached the terms of the contract"

and 3) "the plaintiffs sustained damages as a result of the breach." Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 288 (D. Mass. 2009) (citing Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007)). Similarly, a breach of contract claim under New York law requires a plaintiff to allege 1) "the existence of a contract," 2) "the defendant's breach of his or her contractual obligations" and 3) "damages resulting from the breach." In re GlassHouse Techs., Inc., 654 B.R. 190, 202 (D. Mass. 2023) (citing Dee v. Rakower, 976 N.Y.S.2d 470, 474 (App. Div. 2013) (collecting cases))).[1]

In both jurisdictions, a breach of contract claim must accompany allegations of "the specific terms of a contract . . . [plaintiff] alleges defendant has breached," even if brought pro se. Brooks v. JPMorgan Chase Bank, N.A., No. CIV.A. 12-11634-FDS, 2013 WL 3786448, at *3 (D. Mass. July 17, 2013); see Doyle v. Hasbro, Inc. 103 F.3d 186, 195 (1st Cir. 1996) (holding that a breach of contract claim, to be viable, must allege "the terms of a contract"); see also Anderson v. Greene, 774 F. App'x 694, 697 (2d Cir. 2019) ("[A] complaint must plead the specific provisions of the contract that were allegedly breached." (citing Sud v. Sud, 621 N.Y.S.2d 37, 38 (App. Div. 1995)).

Here, Galakatos fails to state a viable claim for breach of contract because his complaint does not allege any specific

---

[1] New York case law also considers plaintiff's performance but that is not at issue in this case.

provision of the purported agreement between plaintiff and defendants that defendants allegedly breached. The thrust of plaintiff's claim is that defendants are liable for breach of contract because they failed to procure insurance for Galani "for the 2018-2019 term up to $20 million." Nowhere in the complaint, however, does plaintiff refer to any term of any contract between him and defendants, let alone one that specifically binds them to procure insurance for Galani in that amount. See JPMorgan Chase Bank, N.A., 2013 WL 3786448, at *3 (requiring allegations of contractual term to state breach of contract claim); see also Anderson, 774 F. App'x at 697 (same).

Galakatos instead relies on two writings from defendants (which plaintiff describes as "communications") that ask him to inform defendants of his "liability exposures" in order to "eliminate potential gaps in coverage." One of those communications is irrelevant because it was sent after the collision. A purported communication from a company, moreover, does not constitute a contractual term. Accord Lelio v. Marsh USA, Inc., No. CV 15-10335-MLW, 2017 WL 3494214, at *9 (D. Mass. Aug. 14, 2017) (finding reliance on emails and other communications from company's compensation guide were "not the proper basis for a breach of contract claim" absent allegations of contractual provisions themselves). That is especially true where plaintiff does not specify when those communications were

sent relative to the collision. See Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017) (finding claim that company violated alleged promise made in undated letter could not sustain breach of contract claim); accord Doyle, 103 F.3d at 195 (finding that viable breach of contract claim must include allegation of when contract was made).

Plaintiff also asserts that defendants failed to meet with him regularly and therefore did not ensure that his coverage needs were met or that they applied, per the AIG policy, "anywhere in the world." The complaint cites no contractual term, however, that binds defendants to conduct such reviews. Cf. JPMorgan Chase Bank, N.A., 2013 WL 3786448, at *3.

Even construing plaintiff's allegations in his favor, such pleading deficiencies are fatal to his breach of contract claim under both Massachusetts and New York law. See Squeri v. Mount Ida Coll., No. CV 18-12438-RGS, 2019 WL 2249722, at *5 (D. Mass. May 24, 2019), aff'd, 954 F.3d 56 (1st Cir. 2020) (finding "bare allegations" about entity breaching contract without allegations of specific contract provision at issue "d[id] not suffice for a breach of contract claim"); see also Woodhill Elec. v. Jeffrey Beamish, Inc., 904 N.Y.S.2d 232, 233 (App. Div. 2010) (affirming dismissal of breach of contract claim because plaintiff failed to "set forth the particular terms of the contract upon which [the] claim [was] based").

**B. Negligence**

Defendants next assert that Galakatos fails to state a claim for negligence because that claim is barred by the "economic loss doctrine." The economic loss doctrine prohibits a plaintiff from recovering in tort for a breach of contract unless he alleges that his damages "involved physical harm or property damage, and not solely economic loss." In re Shields Health Care Grp., Inc. Data Breach Litig., 721 F. Supp. 3d 152, 160-61 (D. Mass. 2024) (quoting Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 46 (Mass. 2009)). This rule, which exists under "both Massachusetts and New York law," protects contracting the ability of parties to allocate risks and create reasonable expectations about liabilities. Szulik v. State St. Bank & Tr. Co., 935 F. Supp. 2d 240, 270-71 & n.10 (D. Mass. 2013) (citing Burns v. Del. Charter Guar. & Tr. Co., 805 F. Supp. 2d 12, 24 (S.D.N.Y. 2011)).

Specific to insurance brokerage, New York and Massachusetts both recognize an exception to the economic loss rule where a broker negligently fails to obtain an insurance policy and therefore causes economic loss to the insured. Rae v. Air-Speed, Inc., 435 N.E.2d 628, 631 (Mass. 1982); see Everett J. Prescott, Inc. v. Nat'l Grange Ins. Co., No. 923047, 1993 WL 818680, at *1 (Mass. Super. Dec. 1, 1993) (characterizing Rae as creating exception to economic loss rule); see also Jual Const. Ltd. v.

A.C. Edwards, Inc., 902 N.Y.S.2d 428, 428 (App. Div. 2010) ("An insurance agent or broker may be held liable under . . . [a] negligence [claim] for failing to procure insurance . . . , either because the broker breached the [parties'] agreement [or] failed to exercise due care in the transaction." (quotations omitted)).

As with any negligence claim, a claim for negligent failure to procure insurance requires an allegation that defendant owed plaintiff a duty of care. John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 131 (D. Mass. 1999). Whether a defendant owes a duty of care is a question of law that, in cases of negligent failure to procure insurance, must be predicated on an affirmative request from the plaintiff. See Masonic Temple Ass'n of Quincy, Inc. v. Patel, 185 N.E.3d 888, 899 (Mass. 2022); accord Marquez v. Home Depot USA, Inc., 154 F. Supp. 2d 152, 156 (D. Mass. 2001) ("[T]he existence of a duty is a question of law."). A broker "cannot be liable" in negligence for failure to procure insurance unless the plaintiff made an "intelligible request for it to do so." Masonic Temple Ass'n of Quincy, Inc., 185 N.E.3d at 899 (citing Rae, 435 N.E.2d at 631); see Jual Const. Ltd., 902 N.Y.S.2d at 428 (collecting cases).[2]

---

[2] There may be an exception to the "intelligible request" rule if there are "special circumstances," and therefore a fiduciary relationship, between the parties, see Masonic Temple Ass'n of Quincy, Inc., 185 N.E.3d at 899, but for reasons discussed below that exception is not applicable in this case.

Here, because plaintiff's claim arises from allegations that an insurance broker negligently failed to obtain an insurance policy, it is not inherently barred by the economic loss doctrine under either Massachusetts or New York law. See Rae, 435 N.E.2d at 631 (promulgating exception to economic loss rule); see also Jual Const. Ltd., 902 N.Y.S.2d at 428 (same).

Nevertheless, plaintiff's negligence claim is deficient because he does not allege that defendant was duty-bound to procure insurance in the manner he asserts. According to the complaint, defendant

> had a duty of care to [p]laintiff to . . . procure adequate third[-]party liability insurance for Galani . . . up to $20 million.

Plaintiff bases that claim of duty upon communications from defendants that discuss "eliminat[ing] gaps in coverage" to ensure plaintiff's "coverage needs are met" but there is no allegation of a specific contractual term requiring defendants to procure $20,000,000 in insurance for Galani. Nothing in the later communication, moreover, alleges a specific request to procure a specific amount of insurance. See Masonic Temple Ass'n of Quincy, Inc., 185 N.E.3d at 899 (requiring allegations of "intelligible request" made to broker for claim for negligent failure to procure insurance to be actionable); see also Jual Const. Ltd., 902 N.Y.S.2d at 428 (similar).

Galakatos further asserts that he "expected" defendants to "adequately" procure insurance for Galani. Brokers are under no duty, however, to procure a specific level of insurance coverage, adequate or otherwise, unless and until they are requested to do so. See AGA Fishing Grp. Ltd. v. Brown & Brown, Inc., 533 F.3d 20, 23 (1st Cir. 2008) ("There is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured."(citing Martinois v. Utica Nat'l Ins. Grp., 65 Mass. App. Ct. 418, 421 (2006))); see also 46th St. Dev., LLC v. Marsh USA Inc., No. 6012222010, 2011 WL 11074838, at *3 (N.Y. Sup. Ct. Aug. 25, 2011) ("An insurance broker bears no continuing duty to . . . direct a client to obtain additional coverage . . . [absent a] specific request for a certain type of coverage."). No such request is adequately alleged in plaintiff's complaint.

Accordingly, plaintiff's claim for negligence, whether construed in light of Massachusetts law or New York law, will be dismissed. See Masonic Temple Ass'n of Quincy, Inc., 185 N.E.3d at 899 (rejecting negligent failure to procure insurance claim because there has been "no intelligible request" for broker to obtain insurance in the manner alleged); see also Brannigan v. Door, 53 N.Y.S.3d 106, 106 (App. Div. 2017) (dismissing claim

against broker where plaintiff "failed to allege that [he] requested that [the broker] procure a specific type of policy").

### C. Breach of Fiduciary Duty

Finally, defendant contend that plaintiff's breach of fiduciary duty claim is not actionable because the complaint does not allege sufficient facts to show that a fiduciary relationship existed between plaintiff and defendants. As Galakatos concedes, the general rule in both Massachusetts and New York is that insurance brokers "do not . . . owe a fiduciary duty" to their clients. BioChemics, Inc. v. AXIS Reinsurance Co., 277 F.Supp.3d 251, 255 (D. Mass. 2017) (citing Robinson v. Charles A. Flynn Ins. Agency, Inc., 653 N.E.2d 207, 207-08 (Mass. App. Ct. 1995)); see Murphy v. Comm. Land Title Ins. Co., 621 F. Supp. 3d 373, 379 (E.D.N.Y. 2022) ("It is well established that insurance companies normally do not owe a fiduciary duty to their insureds." (quotations omitted)).

A fiduciary duty between a broker and an insured arises only in the narrow instance where there is a "special circumstance" or "special relationship" between them which, ordinarily, is a question of fact. BioChemics, Inc., 277 F. Supp. 3d at 255; Murphy, 621 F. Supp. 3d at 379. Special circumstances may arise based upon sufficient allegations that a broker 1) has a longstanding relationship with the insured, 2) holds itself out as the client's insurance advisor or 3) is paid

separately for its advice. <u>Pedersen</u> v. <u>Hart Ins. Agency, Inc.</u>, No. CIV. 10-10922-NMG, 2011 WL 4970920, at *3 (D. Mass. Oct. 18, 2011) (citing <u>AGA Fishing Grp. Ltd.</u> v. <u>Brown & Brown, Inc.</u>, 533 F.3d 20, 23-24 (1st Cir. 2008)); <u>Murphy</u>, 621 F. Supp. 3d at 379.

Here, plaintiff fails to state a claim for breach of fiduciary duty because he does not adequately allege a fiduciary relationship existed between him and defendants. His complaint offers a single allegation that he had a "special, longstanding relationship" with defendants but that conclusory statement is unavailing without factual support. The complaint does not explain how or why their relationship was longstanding, how defendants held themselves out as plaintiff's advisor or whether consideration was paid for insurance advice. The absence of such allegations negates any fiduciary duty claim. <u>Cf</u>. <u>Pedersen</u>, 2011 WL 4970920, at *3 (outlining circumstances that give rise to fiduciary obligation); <u>Murphy</u>, 621 F. Supp. 3d at 379 (same).

To be sure, plaintiff's complaint does state that plaintiff has allegedly been a client of defendants since 2006 and that defendants had communicated with plaintiff about "appropriately advis[ing]" him. A lengthy relationship doe not, however, make it special. <u>See</u> <u>Humphries</u> v. <u>Metro. Prop. & Cas. Ins. Co.</u>, No. 152521/2015, 2020 WL 5801066, at *5 (N.Y. Sup. Ct. Sep. 29, 2020) ("[T]he duration of the client-broker relationship alone does not create a special relationship[, even a] . . . 20-year

client-broker relationship."); see also RLI Ins. Co. v. Wood Recycling, Inc., No. CIV.A.03-10196-RWZ, 2006 WL 839514, at *8 (D. Mass. Mar. 30, 2006) (finding no special circumstances despite longstanding broker-insured relationship). Likewise, a broker's written communications or advertisements promising expertise and advice alone cannot give rise to a special relationship. See Capital Asset Recovery Fund, LP v. Glacial Star Grp., Inc., No. 451887/2014, 2016 WL 2961990, at *6 (N.Y. Sup. Ct. May 19, 2016) ("[A] subjective claim of reliance on another party's expertise does not give rise to a fiduciary relationship."); see also Patsos v. First Albany Corp., 741 N.E.2d 841, 851 (Mass. 2001) (recognizing that merely placing trust in broker does not create fiduciary relationship).

Because the foregoing reasons provide sufficient grounds to dismiss the complaint, the Court declines to address defendants' additional arguments that this case should be dismissed because of the alleged mandatory forum selection clause, or because the alleged forum selection clause warrants a transfer of venue. Plaintiff's pending motion to strike the client engagement letter, attached to defendants' pleadings, which is related to defendants' arguments regarding the forum selection clause, will also be denied as moot.

ORDER

For the foregoing reasons, the motion to dismiss of defendants, Marsh & McLennan Companies, Inc., and others, (Docket No. 9) is **ALLOWED**, and the motion of plaintiff, Nicholas Galakatos, to strike (Docket No. 24) is **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: February 24, 2025